**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|   |   |
|---|---|
| JAMES L. ROUDABUSH, | : |
| | : : Civil Action No. 11-980(SDW) |
| Plaintiff, | : |
| | : |
| v. | : **O P I N I O N** |
| | : |
| UNITED STATES OF | : |
| AMERICA, et al., | : |
| | : |
| Defendants. | : |
| | : |

---

**APPEARANCES:**

James L. Roudabush, <u>pro se</u>
54 Grant Street
P.O. Box 6000
Mt. Holly, N.J. 08060

**WIGENTON,** District Judge

Plaintiff, James L. Roudabush ("Plaintiff"), confined at Northern State Prison in Newark, New Jersey at the time he submitted this complaint for filing, seeks to bring this action in forma pauperis. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the complaint.

At this time, the Court must review the complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state

a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the complaint should proceed in part.

## I. BACKGROUND

Plaintiff brings this civil action, pursuant to 42 U.S.C. § 1983, against the following Defendants: United States of America; Governor Chris Christie; Gary Lanigan, the Commissioner of the New Jersey Department of Corrections; P. Lagano, Northern State Prison Administrator; John/Jane Doe, Head of New Jersey Department of Corrections Special Investigations Division; Investigator Robinson, Special Investigation Division at Northern State Prison; John/Jane Doe, New Jersey State Police Officers; C. Larkins, Captain of Security, Burlington County Jail; R. Cox, Warden of Burlington County Jail; Burlington County Board of Chosen Freeholders; Frank Lautenberg, United States Senator; and United States District Court for the District of New Jersey.

Plaintiff initially filed his complaint and motion to proceed in forma pauperis in the United States District Court for the District of Columbia. (See Docket Entry No. 1.) The District of Columbia District Court transferred the action here pursuant to 28 U.S.C. § 1406(a) because none of the alleged events took place in the District of Columbia and the Defendants are all located in New Jersey. (Docket Entry No. 3.) The District of Columbia District

2

Court further stated that Plaintiff's motion to proceed in forma pauperis would be left for this Court to decide. (Id.) Said motion is currently before this Court. The following factual allegations are taken from the complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

While in the Burlington Detention Center from December 23, 2009 through September 21, 2010, Plaintiff became aware of drug dealing and cell-phone dealing between correctional officers and inmates. He also witnessed a threat on Governor Christie's life by a correctional officer. He tried to expose this information to the news media, government agencies and courts.

For over two months, Plaintiff alleges that he was abused mentally and physically. He alleges that "between August 27, 2010 and September 21, 2010, Inv. Robinson met with/spoke with Captain Larkins, R. Cox and conspired to implement a plan to block any and all attempts [Plaintiff] made to tell anyone (outside agency) about the operation of Burlington Co. Jail., e.g. gang members who are c/o's; c/o's at work 'high' on alcohol/drugs; gang activities, etc." Plaintiff alleges that he has a bad lower back and he was purposefully assigned to a top bunk. Plaintiff alleges that he requested protective custody and Lt. Weizer refused his request. Plaintiff alleges that instead, he was given a disciplinary charge and placed in lock-up. He alleges that this was done because of

3

his sexual orientation.  On October 4, 2010, a disciplinary hearing was held and Plaintiff alleges he was denied due process. Specifically, Plaintiff alleges that the hearing was conducted and the decision was made before he was present and able to argue his version.  He also alleges he was denied a right of appeal.

On October 26, 2010, Plaintiff was placed in administrative segregation.  Plaintiff alleges that he had no hearing; no prior notice of a hearing; and no reason or justification for the extended lock-down was given.

On November 21, 2010, Plaintiff alleges that he was deliberately placed in a cell with Inmate Page who beat him. Plaintiff alleges that Inmate Page is a relative of the official who placed him in said cell and the official has previously testified for the state in favor of prison officials.  From October 20, 2010 through November 4, 2010, Plaintiff alleges that he was repeatedly threatened and beaten by Inmate J. Bell and nothing was done to stop it.

Plaintiff further alleges that he is being denied the following: grievance forms; social workers; toilet paper; recreation; spoon for food; shower shoes; socks; t-shirt; underwear; Bible; haircut; legal papers; blanket; hot water; glasses; food; water; adequate law library supplies; soap; towel; reading material and toothpaste.  Plaintiff further alleges that there are two men in a cell and six days a week, they are on

4

twenty-four hour lock-down.  Plaintiff further alleges that his
outgoing mail is refused by correctional officers and thrown away.
Plaintiff further alleges that he has been wearing the same clothes
for forty-eight days.  Plaintiff further alleges that he has been
denied medical care for over fifty-five days.

On October 14, 2010, Plaintiff alleges that he gave four legal
letters to Correctional Officer Bird and to the best of his
knowledge, those letters were never sent.  On October 5, 2010,
Plaintiff alleges that he gave an appeal of the disciplinary
decision against him to Correctional Officer Bird and it was
allegedly not received by the administration.  On November 4th and
7th, 2010, Plaintiff gave legal letters to Correctional Officers
Kapichy and to the best of his knowledge, those letters never
arrived.  On November 11th and 12th, 2010, Plaintiff gave two legal
letters to Correctional Officer Wilson which did not leave Northern
State Prison.  On November 18, 2010, Plaintiff gave two legal
letters to Correctional Officer Buddeh which did not leave the
facility.  Plaintiff alleges that he was denied law library access
and materials from October 1, 2010 through October 20, 2010.

Plaintiff requests the following: (1) Fifty thousand dollars
per day for each day of unconstitutional conditions served by
Plaintiff during his incarceration; (2) declaration that the
conditions of Plaintiff's confinement were unconstitutional; (3)
one hundred thousand dollars for each day of the sixty days time

credit illegally taken from Plaintiff; (4) all court costs; (4) one million dollars as punitive damages; (5) attorneys' fees and costs; and (6) other relief deemed appropriate by the court.

After filing his initial complaint, Plaintiff filed several supplemental letters alleging further incidents. On February 17, 2011, excessive force was used against Plaintiff by Officers Goldman and Hinkle and Lieutenant Wright. Plaintiff alleges he was pushed into a cinderblock wall, injuring his head and wrists. Plaintiff alleges that he was denied medical attention. Plaintiff alleges that on February 25th and March 12, 2011, his outgoing legal mail to this Court was held at the facility for five days and then returned to him. Plaintiff further alleges that he was placed in an unsafe dorm purposefully because the officers are trying to get him hurt because he is gay. Plaintiff further alleges that his incoming mail is being returned to sender without notifying him, as required by law. Plaintiff further alleges that Officer D. Ziernick "deliberately and with hostile intentions informed inmates that [he] was dropping grievances on inmates."

On April 13, 2011, Plaintiff filed a letter requesting to add additional defendants and claims. He seeks to add: John Keesler, Esq., Andrew McDonnell,Esq., Commonwealth Attorney W. Neely, Esq., and Honorable Haas, J.S.C. Plaintiff alleges on December 15, 2010, Spotsylvania County, Virginia decided to extradite him on outstanding warrants, even though previously they had indicated

6

that they would not.   Mr. Keesler was Plaintiff's attorney of record at trial and Andrew McDonnell was the prosecuting attorney. Plaintiff alleges that Keesler and McDonnell decided to "hide from him" the fact that Spotsylvania County wanted him for theft/shoplifting.  Plaintiff alleges this was done in response to the numerous grievances and motions Plaintiff filed during the trial.  Plaintiff also alleges that his rights were violated during the extradition proceeding by Judge Haas.

Plaintiff also alleges that an incident took place on May 1, 2011, where he was informed by Officer Polk that he was not permitted to stand by the gate, when other inmates are routinely permitted to do so.

On June 30, 2011, Plaintiff filed a letter with this Court stating that he is requesting to be transferred to federal custody. However, Plaintiff relies on a repealed statute, 18 U.S.C. § 4085, as the basis for his request.  Further, Plaintiff does not provide sufficient details to permit the Court to evaluate his request. Finally, this "motion" does not comply with the requirements set forth in L. Civ. R. 7.1.  As such, the Court will not address said request.

## II.  DISCUSSION

## A.  Legal Standard

## 1.  Standards for a Sua Sponte Dismissal

The Prison Litigation Reform Act, Pub.L. No. 104-134, §§

801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.   The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. This action is subject to sua sponte screening for dismissal under both 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, because Plaintiff is a prisoner and is proceeding as an indigent.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.   See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

Recently, the Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).   The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2). Citing its opinion in Bell Atlantic Corp. v. Twombly, 550

8

U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  See id. at 1949-50; see also Twombly, 505 U.S. at 555, & n. 3; Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).

## 2.  Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution

or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.   See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## B.  Analysis

### 1. Claims against the United States of America

The complaint must be dismissed as against the named Defendant, the United States of America.  The United States has sovereign immunity except where it consents to be sued.  United States v. Mitchell, 463 U.S. 206, 212 (1983).  In the absence of such a waiver of immunity, Plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), or against any individual defendants being sued in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government).  Therefore, Plaintiff's claims against the United States must be dismissed in their entirety.

### 2. Claims against Burlington County Board of Chosen Freeholders, Senator Lautenberg and Governor Christie

Plaintiff has alleged claims against the Burlington County Board of Chosen Freeholders and Senator Frank Lautenberg. The only allegations against these defendants are that Senator Lautenberg used his office to influence Department of Justice investigations

10

over the last few years to make his constituents happy; that the
Board of Chosen Freeholders allowed individuals under their
supervision to commit these acts by not taking any action; and that
Governor Christie has the authority and duty to guarantee that
Plaintiff is not mistreated and he failed to stop the abuse.

Local government units and supervisors are not liable under §
1983 solely on a theory of respondeat superior.  See City of
Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8, 105 S.Ct. 2427, 85
L.Ed.2d 791 (1985); Monell v. New York City Department of Social
Services, 436 U.S. 658, 690-91, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611
(1978) (municipal liability attaches only "when execution of a
government's policy or custom, whether made by its lawmakers or by
those whose edicts or acts may fairly be said to represent official
policy, inflicts the injury" complained of); Natale v. Camden
County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).
"A defendant in a civil rights action must have personal
involvement in the alleged wrongs, liability cannot be predicated
solely on the operation of respondeat superior.   Personal
involvement can be shown through allegations of personal direction
or of actual knowledge and acquiescence." Rode v. Dellarciprete,
845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); Baker v.
Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff
must show that an official who has the power to make policy is

11

responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom

12

may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Natale, 318 F.3d at 584 (footnote and citations omitted).

Here, the claims against the Freeholders, Senator Lautenberg and Governor Christie appear to be based solely upon an untenable theory of vicarious liability and thus, fail to state a claim. Therefore, the claims against these three defendants will be dismissed.

### 3. Claims Against Keesler, McDonnell, Neeley and Judge Haas

The claims against Keesler, McDonnell, Neeley and Judge Haas appear to arise out of a previous trial that Plaintiff had in state court. Specifically, Plaintiff appears to be alleging that these Defendants conspired to keep Plaintiff from becoming aware of detainers that were lodged against him in Spotsylvania, Virginia due to grievances and motions he filed during his trial. These claims are not properly joined in an action with Plaintiff's other claims regarding his treatment while incarcerated.

Rule 18(a) controls the joinder of claims. In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party." Rule

13

20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
>
>> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>> (B) any question of law or fact common to all defendants will arise in the action.

See, e.g., Pruden v. SCI Camp Hill, 252 Fed .Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all. If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy.

Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002).  However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. See, e.g., Pruden, 252 Fed.Appx. at 436; George, 507 F.3d at 605; Coughlin v. Rogers, 130 F.3d 1348 (9th Cir.1997).

Pursuant to Rule 21, misjoinder of parties is not a ground for dismissing an action. Instead, a court faced with a complaint improperly joining parties "may at any time, on just terms, add or drop a party. The court may also sever any claims against a party." Here, the claims arising out of the state court trial appear to be completely unrelated, factually and legally, from the claims arising out of conditions at the jail.  Accordingly, this Court will dismiss without prejudice all claims arising out of the state court trial.[1]

### 4.  Claims Against United States District Court for the District of New Jersey

Plaintiff alleges that the District Court has engaged in a "hands off" approach to prison operations in a conspiracy with Department of Corrections Officials which has resulted in failure to follow United States Supreme Court precedent thereby "betraying the oath to uphold the constitution."  It appears that Plaintiff's

---

[1] Should Plaintiff wish to proceed with these claims, he must file a new and separate complaint, accompanied by either the $350 filing fee or a new application for leave to proceed in forma pauperis.  This Court makes to representation as to whether these allegations state a claim sufficient to survive preliminary screening pursuant to 28 U.S.C. §§ 1915 or 1915A, or 42 U.S.C. § 1997e.

claims are more appropriately construed as against the Judges of the District Court for the District of New Jersey.

Generally, a judicial officer in the performance of his or her duties has absolute immunity from suit. <u>Mireless v. Waco</u>, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L. Ed.2d 9 (1991). Further, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." <u>Stump v. Sparkman</u>, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L. Ed.2d 331 (1978). Judicial immunity serves an important function in that it furthers the public interest in judges who are "at liberty to exercise their functions with independence and without fear of consequences." <u>Pierson v. Ray</u>, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L. Ed.2d 288 (1967). Judicial immunity is an immunity from suit, not just from ultimate assessment of damages. <u>Mireless</u>, 502 U.S. at 11.

There are two circumstances where a judge's immunity from civil liability may be overcome. These exceptions to the doctrine of judicial immunity are narrow in scope and are infrequently applied to deny immunity. The first exception is where a judge engages in non-judicial acts, i.e., actions not taken in the judge's judicial capacity. <u>Id.</u> The second exception involves actions that, though judicial in nature, are taken in the complete absence of all jurisdiction. <u>Id.</u> Neither exception is applicable in the present case as Plaintiff's allegations relate to legal

decisions made by the judges.  Therefore, the claims against the United States District Court for the District of New Jersey are hereby dismissed.

## 5. Due Process Claims

Plaintiff alleges that he requested protective custody but his request was refused and instead, he was given a disciplinary charge and placed in lock-up. He alleges that he was denied due process because on October 4, 2010, he was sanctioned before he was even present at the hearing and he was denied the right of an appeal. He received the maximum sanction: fifteen days of detention, sixty days loss of good time credit; ninety days administrative segregation; and loss of custody level.  He further alleges that he was also denied his due process rights on October 26, 2010 when he was not given notice of his hearing; he had no opportunity to argue and the assignment to administrative segregation was against NJ DOC policies.

In <u>Wolff v. McDonnell</u>, the Supreme Court set forth the requirements of due process in prison disciplinary hearings. An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) the right to an impartial hearing; (3) assistance from an inmate or staff representative if the charged inmate is illiterate or if complex issues are involved; (4) an opportunity "to call witnesses and

17

present documentary evidence in his defense when to do so will not

be unduly hazardous to institutional safety or correctional goals";

and (5) written statement by the fact finder as to the evidence

relied on and the reasons for the disciplinary action. See Wolff,

418 U.S. at 563-72.[2]

Here, Plaintiff claims that he was denied certain rights

during his disciplinary hearings. If true, this would be a

violation of Plaintiff's right to due process, and Plaintiff may

bring a § 1983 action for money damages related to the alleged

denial of procedural due process. See Wolff, supra; Henry v.

Sanchez, 923 F.Supp. 1266, 1270 (C.D.Cal. 1996). In Wolff, the

Supreme Court held that, although claims for injunctive relief were

barred by Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36

L.Ed.2d 439 (1973), plaintiffs were allowed to bring a damage claim

because the claim was based on "damages for the deprivation of

civil rights resulting from the use of the allegedly

unconstitutional procedure." Sanchez, 923 F.Supp. at 1270. In

Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383

(1994), the Supreme Court reaffirmed this principle, stating that

Wolff "recognized a Section 1983 claim for using the wrong

---

[2] In Wolff, the Supreme Court held that, while prisoners
retain certain basic constitutional rights, including procedural
due process protections, prison disciplinary hearings are not
part of criminal prosecution, and an inmate's rights at such
hearings may be curtailed by the demands and realities of the
prison environment. See id. at 556-57; Young v. Kann, 926 F.2d
1396, 1399 (3d Cir. 1991).

18

procedures, not for reaching the wrong result .... Thus, the claim at issue in Wolff did not call into question the lawfulness of plaintiff's continuing confinement." Heck, 512 U.S. at 482-83.

When an inmate is not afforded procedural protections to which he may be entitled, the district court must determine whether the denial of due process caused the resulting deprivations for which damages are sought.  See Carey v. Piphus, 435 U.S. 247, 261, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1977).  A plaintiff who brings a successful § 1983 action based on a due process violation may be entitled to nominal damages even if there is no proof of actual injury.  See Carey, 435 U.S. at 266-67.

Here, liberally construing the complaint, it would appear that Plaintiff is challenging the constitutionality of the procedures used, or more correctly, the lack of notice and lack of opportunity to call witnesses and present documentary evidence in his defense as guaranteed under Wolff.  Therefore, the Court will allow this claim to proceed.

**6.  Failure to Protect**

Plaintiff alleges several incidents in October and November 2010 where he was deliberately placed in cells with certain individuals who proceeded to "beat" him.  Thus, it appears that Plaintiff is attempting to assert a failure to protect claim in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

19

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety, Id. at 837. "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm. Farmer, 511 U.S. at 834.

Here, Plaintiff alleges that he was placed in a cell on November 19, 2010 with Inmate Page, who proceeded to beat him. He states that he was placed in said cell by Lieutenant St. Paul and Sergeant Wormley. Plaintiff alleges that these Defendants deliberately placed him in the cell because they had previously testified for the state in favor of prison officials. However, Plaintiff does not allege that these Defendants knew or had reason

20

to know that Inmate Page posed a risk to Plaintiff's safety. Therefore, Plaintiff's failure to protect claim will be dismissed without prejudice.

**7.  Conditions of Confinement Claims**

Plaintiff makes numerous allegations concerning the conditions of his confinement at the Burlington County Jail.  More specifically, he claims that he is denied toilet paper; recreation; spoon for food; shower shoes; socks; t-shirt; underwear; Bible; haircut; legal papers; blanket; hot water; glasses; food; water; adequate law library supplies; soap; towel; reading material and toothpaste.

"The Eighth Amendment to the United States Constitution prohibits any punishment which violates civilized standards and concepts of humanity and decency." Young v. Quinlan, 960 F.2d 351, 364 (3d Cir.1992), superseded on other grounds by 42 U.S.C. § 1997e(a).  A prisoner does not lose this protection despite a prison sentence, for "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).  In order to establish a claim under the Eighth Amendment based on conditions of confinement, the Supreme Court has set forth a two-part test with objective ("Was the deprivation sufficiently serious?") and subjective ("Did the officials act with a sufficiently culpable state of mind?") components. Wilson v.

21

Seiter, 501 U.S. 294, 298 (1991).  The objective element requires a prisoner to show that his living conditions amounted to a "serious deprivation of basic human needs." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  The subjective element demands that the prisoner demonstrate "that prison officials acted or failed to act with deliberate indifference." Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

With regards to the objective prong, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 347. "To the extent that such conditions are harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id.  Conditions of confinement for convicted criminals are unconstitutional only when they "deprive inmates of the minimal civilized measure of life's necessities." Id.  Indeed, under the Due Process Clause, as well as the Eighth Amendment, prison officials must satisfy inmates' "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." Helling v. McKinney, 509 U.S. 25, 32 (1993).

In this case, Plaintiff does not provide any details, but rather only puts forth a list of complaints about the conditions. Consequently, the allegations in the Complaint regarding the conditions of confinement are too conclusory to show conditions sufficient to rise to the level of a constitutional deprivation under the Iqbal pleading standard. "[T]he pleading standard Rule

8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.... Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 129 S.Ct. at 1949 (citations and internal quotation marks omitted). Therefore, Plaintiff's claim about the conditions of confinement will be dismissed without prejudice at this time.

**8. Denial of Medical Care Claim**

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir.1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

Here, Plaintiff only states that he is being denied medical care "for over 55 days." He does not provide any further information. As such, this claim does not meed the requirement of Iqbal and therefore will be dismissed without prejudice. ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned,

23

the-defendant-unlawfully-harmed-me accusation.... Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 129 S.Ct. at 1949 (citations and internal quotation marks omitted)).

## 9. Access to the Courts Claim

Plaintiff alleges that he was denied his First Amendment right of access to the courts by denial of law library supplies, no research access, and no copies.

Courts have recognized different constitutional sources for the right of access to the courts. Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments. The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement. Bounds v. Smith, 430 U.S. 817, 822 (1977). In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts." Id. at 825. "'[T]he touchstone ... is meaningful access to the courts.'" Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988) (quoting Bounds, 430 U.S. at 823) (internal quotation omitted).

In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison

24

authorities to assist inmates in the preparation and filing of
meaningful legal papers by providing prisoners with adequate law
libraries or adequate assistance from persons trained in the law."
The right of access to the courts is not, however, unlimited. "The
tools [that Bounds] requires to be provided are those that the
inmates need in order to attack their sentences, directly or
collaterally, and in order to challenge the conditions of their
confinement.  Impairment of any other litigating capacity is simply
one of the incidental (and perfectly constitutional) consequences
of conviction and incarceration." Lewis v. Casey, 518 U.S. 343,
355 (1996) (emphasis in original).

Moreover, a prisoner alleging a violation of his right of
access must show that prison officials caused him past or imminent
"actual injury" by hindering his efforts to pursue such a claim or
defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v.
Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for
example, that a complaint he prepared was dismissed for failure to
satisfy some technical requirement which, because of deficiencies
in the prison's legal assistance facilities, he could not have
known. Or that he had suffered arguably actionable harm that he
wished to bring before the courts, but was so stymied by
inadequacies of the law library that he was unable to file even a
complaint." Lewis, 518 U.S. at 351.

Here, Plaintiff fails to allege any actual injury as a result

25

of the alleged denial of legal papers, law library supplies and copying. He does not allege that he was unable to file this or any other complaint in the courts, and in fact, he has not been limited in filing the instant action. Furthermore, Plaintiff does not articulate how the allegedly inadequacies or lack of legal supplies hindered his efforts to either pursue this claim or other court actions, or even his filing of administrative grievances. Therefore, his claim alleging denial of access to the courts will be dismissed without prejudice for failure to state a claim at this time.

## 10.   Interference with the Mail Claim

Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments; thus, an inmate's constitutional right to send and receive mail may be restricted only for legitimate penological interests. See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987). A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation. Morgan v. Montayne, 516 F.2d 1367 (2d Cir.1975), cert. denied, 424 U.S. 973 (1976).

The assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen states a First Amendment claim. See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996); Castillo v. Cook County Mail Room

Dep't, 990 F.2d 304 (7th Cir. 1993).  The Court of Appeals for the
Third Circuit has held that "a pattern and practice of opening
properly marked incoming court mail outside an inmate's presence
infringes communication protected by the right to free speech.
Such a practice chills protected expression and may inhibit the
inmate's ability to speak, protest, and complain openly, directly,
and without reservation with the court."  Bieregu v. Reno, 59 F.3d
1445, 1452 (3d Cir. 1995) (applying the Turner analysis), implied
overruling on other grounds recognized in Oliver v. Fauver, 118
F.3d 175, 177-78 (3d Cir. 1997).  The Third Circuit has held that
the legal mail policy of state prisons in opening legal mail
outside the presence of the inmate violated the inmate's First
Amendment right to freedom of speech, and was not reasonably
related to prison's legitimate penological interest in protecting
health and safety of prisoners and staff.  Jones v. Brown, 461 F.3d
353 (3d Cir. 2006), cert. denied, 127 S.Ct. 1822 (2007).

Allegations of inspection or interference with an inmate's
legal mail also may implicate the inmate's Sixth Amendment right
to communicate freely with his attorney in a criminal case.  See
Wolff v. McDonnell, 418 U.S. 539, 575 (1974) (upholding regulation
permitting legal mail to be opened and inspected for contraband,
but not read, in the presence of the inmate).

Here, Plaintiff alleges that his legal has not been sent out
on eight separate occasions.  He states that the mail was clearly

27

marked as "legal."  At this early stage of screening, the Court
will allow this claim to proceed.

## 11.  Deprivation of Property Claim

The Fourteenth Amendment provides, in pertinent part here,
that the State may not "deprive any person of life, liberty, or
property, without due process of law[.]"  The "due process of law"
essentially requires that the government provide a person notice
and opportunity to be heard in connection with the deprivation of
life, liberty or property.   Zappan v. Pennsylvania Board of
Probation and Parole, 152 Fed. Appx. 211, 220 (3d Cir. 2005) ("The
essential requirements of any procedural due process claim are
notice and the opportunity to be heard.").  Hence, to establish a
prima facie case of a procedural due process violation, a plaintiff
must establish: (1) a deprivation of a constitutionally protected
liberty or property interest, (2) state action, and (3)
constitutionally inadequate process.  See Rusnak v. Williams, 44
Fed. Appx. 555, 558 (3d Cir. 2002) ("Procedural due process claims,
to be valid, must allege state sponsored-deprivation of a protected
interest in life, liberty or property. If such an interest has been
or will be deprived, procedural due process requires that the
governmental unit provide the individual with notice and a
reasonable opportunity to be heard.") (citation omitted).

To have a property interest, Plaintiff must demonstrate "more
than an abstract need or desire for it.... He must, instead, have

28

a legitimate claim of entitlement to it" under state or federal law. <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972). For present purposes, a procedural due process analysis involves a two step inquiry: the first question to be asked is whether the complaining party has a protected liberty or property interest within the contemplation of the Due Process clause of which he has been deprived and, if so, the second question is whether the process afforded the complaining party to deprive him of that interest comported with constitutional requirements. <u>Shoats v. Horn</u>, 213 F.3d 140, 143 (3d Cir.2000).

Plaintiff alleges that his clothing, coat, glasses, shower shoes were taken from him while at Mid-State Correctional Facility and his underclothes were taken from him while at Northern State Prison. To the extent that Plaintiff was deprived of personal property as a result of his transfers between facilities, he has a post-deprivation remedy. Property loss caused by the intentional acts of government officials does not give rise to a procedural due process claim under § 1983 where a post-deprivation remedy satisfying minimum procedural due process requirements is available under state law. <u>See</u> <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981) (overruled in part on other grounds by <u>Daniels v. Williams</u>, 474 U.S. 327 (1986)); <u>see also</u> <u>Zinermon v. Burch</u>, 494 U.S. 113, 115 (1990); <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984); <u>Holman</u>, 712 F.2d at

856.[3]

The New Jersey Tort Claims Act ("NJTCA"), N.J. STAT. ANN. § 59:1-1 et seq. , provides a post-deprivation judicial remedy to persons who believe they were deprived of property at the hands of the State or local government.  See Holman, 712 F.2d at 857; Asquith  v.  Volunteers  of  America,  1  F.Supp.2d  405,  419 (D.N.J.1998), aff'd 186 F.3d 407 (3d Cir. 1999).

Therefore, any deprivation of property claim asserted by Plaintiff here will be dismissed with prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[4]

**12.  Retaliation Claims**

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ..." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990). To prevail on a retaliation claim, plaintiff must demonstrate that (1)

---

[3] In Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action. 455 U.S. at 435-36. But see Tillman v. Lebanon Co. Correctional Facility, 221 F.3d 410, 421 n. 12 (3d. Cir.2000) (citing United States v. James Daniel Good Real Property, 510 U.S. 43, 53 (1993)) (in "extraordinary situations" such as routine deduction of fees from a prisoner's account even without authorization, post-deprivation remedies may be adequate).

[4] Moreover, the Court must dismiss Plaintiff's tort claims related to Plaintiff's personal property since it appears from the face of Plaintiff's complaint that Plaintiff did not file a timely Notice of Claim before filing tort claims against a "public entity or public employee" in accordance with the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-3.  See County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 173-74 (3d Cir. 2006) (citations omitted).

he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

Plaintiff alleges many incidents undertaken by the Defendants in retaliation for his filing of grievances. Specifically, he alleges that he was denied protective custody; that he was placed in cells with certain dangerous individuals; that he is denied certain necessities; that his mail is tampered with; that he is denied law library access; and several other incidents.

Based on the allegations as set forth above, this Court finds that Plaintiff may be able to show a claim of retaliation because he alleges that all of the wrongful and harassing conduct was done in retaliation for Plaintiff filing grievances and complaints, a legitimate exercise of Plaintiff's First Amendment rights. Therefore, Plaintiff's claims of retaliation will be allowed to proceed at this time.

## III. Conclusion

For the reasons stated above, Plaintiff's claims against the United States of America, the Burlington County Board of Chosen Freeholders, Senator Frank Lautenberg, Governor Christie, John Keesler, Esq., Andrew McDonnell,Esq., Commonwealth Attorney W. Neely, Esq., the Honorable Haas, J.S.C. and the United States District Court for the District of New Jersey are hereby dismissed in their entirety.  Plaintiff's due process claim, interference with the mail claim and retaliation claim shall be allowed to proceed.  Plaintiff's failure to protect claim, conditions of confinement claim, denial of medical care claim, access to the courts claim and deprivation of property claim shall be dismissed. Plaintiff may move to file an amended complaint to correct the deficiencies, and to allege sufficient facts to demonstrate the plausibility of the dismissed claims, as outlined in Iqbal, and in accordance with this Opinion.  Plaintiff's motion to amend must adhere to the court rules.  An appropriate order follows.


                                        s/Susan D. Wigenton
                                        SUSAN D. WIGENTON
                                        UNITED STATES DISTRICT JUDGE

Dated: July 14, 2011